IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OBERER LAND DEVELOPERS,　　　　　:
LTD., *et al.*,

　　　　Plaintiffs,

　　v.　　　　　　　　　　　　　　　:　　Case No. 3:19-cv-82

SUGARCREEK TOWNSHIP,　　　　　　　　JUDGE WALTER H. RICE
OHIO, *et al.*,　　　　　　　　　　:

　　　　Defendants.

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS (DOC. #7); CONFERENCE CALL SET

---

Oberer Land Developers, Ltd., and Peter Rammel sued Sugarcreek Township,

Ohio, and its Board of Trustees, challenging their denial of approval of a proposed

development plan. Plaintiffs seek damages under 42 U.S.C. § 1983 for numerous

alleged constitutional violations, as well as claims under state law. They also seek

declaratory and injunctive relief. This matter is currently before the Court on

Defendants' Motion for Judgment on the Pleadings, Doc. #7.


I.　　**Background and Procedural History**

Plaintiff, Oberer Land Developers, Ltd. (Oberer"), was instrumental in

developing the Dille/Cornerstone project in Sugarcreek Township, a political

subdivision located in Greene County, Ohio. The annexation of this large

commercial development by the adjoining City of Centerville spurred years of litigation between the City and Sugarcreek Township.

Thereafter, Sugarcreek Township identified other areas that were vulnerable to future annexation, *i.e.*, areas adjacent to an incorporated area or areas adjacent to public land that is adjacent to an incorporated area. To prevent similar future annexations, the Township revised its Long-Range Land Use Plan ("LRLUP") in 2013. Doc. #5-1. By increasing flexibility for development within the Township, the LRLUP attempted to head off further annexation. The 2013 LRLUP divides the Township into several Planning Areas. Portions of Planning Area 3, located near the Sugarcreek Reserve Metropark, are vulnerable to annexation. These "are priority areas for Planned Residential Development, with densities to be determined on a case by case basis by the Zoning Commission and Township Trustees." *Id.* at PageID#44. "This area is a priority area for conservation subdivisions characterized by the clustering of lots to preserve 50 percent or more of a site." *Id.*

To prevent future annexation, the Township also obtained Non-Annexation Agreements from several property owners, including Plaintiff Peter Rammel, who owns three parcels of real property located in Planning Area 3. His property, consisting of approximately 107 acres, is subject to annexation by the City of Centerville because it is adjacent to public land that is adjacent to an incorporated area. His property is currently zoned "E-Rural Estate Residential District." On July 11, 2014, Rammel signed a Non-Annexation Agreement, agreeing not to seek and

2

to oppose annexation of any portion of his property for a period of ten years.  In return, the Sugarcreek Township Board of Trustees agreed not to impose tax increment financing ("TIF") legislation on his property for the same period.  The Agreement was signed by Barry Tiffany, the Township Administrator, on behalf of the Board of Trustees.  Doc. #1-1, PageID#16.

On August 24, 2017, Oberer agreed to purchase a portion of Rammel's property to develop Elliot Woods, a 113-lot residential area consisting of patio homes.  That purchase, however, was subject to necessary governmental approvals.  In February of 2018, Oberer filed an application to rezone 84.570 acres of Rammel's property to a "Residential Planned Unit Conservation Development District" ("R-PUCD").  Oberer also submitted a preliminary development application.  These applications were reviewed by the Greene County Regional Planning and Coordinating Commission ("GCRPCC"), which was to make a recommendation to the Sugarcreek Township Board of Zoning Commission ("BZC").

Rammel's property is accessible from Wilmington-Dayton Road, a two-lane road with two 90-degree jogs at the northeast side of the property, near the intersection of Wilmington-Dayton Road and Conference Road.  *See* Doc. #5-2, PageID#57.  The Greene County Thoroughfare Plan had long recommended eliminating these two jogs by extending Wilmington-Dayton Road through Rammel's property; however, no road improvements were currently planned.  Doc. #5-2, PageID#54.  The GCRPCC recommended approval of the rezoning request

3

but recommended that the submitted layout of the proposed development be reconsidered and that a traffic study be conducted before any final decision was made. *Id.* at PageID#56.

In response to the recommendation, Oberer, with the approval of the Greene County Engineer, proposed putting a traffic signal at the intersection of Conference Road and Wilmington-Dayton Road. Township Trustee Michael Pittman allegedly persuaded the GCRPCC to reject this plan, and to instead require Oberer to remediate three intersections—eliminating the two 90-degree jogs in Wilmington-Dayton Road and remediating traffic issues at another intersection located more than one mile from the proposed development.

These requirements had the effect of eliminating approximately 3.30 acres, or 15 lots, from the proposed development. Nevertheless, in July of 2018, Oberer begrudgingly submitted a revised application for 98 building lots. As required by the Township's Zoning Resolution, the proposed development set aside at least 50% of the total area for open space. The proposed development had a density of 1.2 units per acre. This was less dense than the nearby developments of Woodland Ridge (1.5 units per acre) and Black Farm (2.95 units per acre). However, all of the patio homes in Elliot Woods were to be clustered in one area of the now-83 acres, away from the realigned road. The GCRPCC recommended approval of the revised application subject to several conditions, which Oberer agreed to satisfy. Doc. #5-3, PageID##112-13.

The Board of Zoning Commission ("BZC") considered the revised application at its December 4, 2018, meeting. Doc. #5-5. Approximately 130 people attended that meeting. Many were strongly opposed to the proposed development, citing road and traffic issues and population density. At that meeting, the BZC Chairperson, Mr. Betz, referenced Oberer's role as the developer of the Dille/Cornerstone property that was annexed to the City of Centerville. Betz further noted that, thereafter, the Township updated the LRLUP to decrease the risk of annexation. Betz also noted that Rammel had signed a Non-Annexation Agreement. Accordingly, there was no immediate risk that, if this particular development were not approved, the property would be annexed to the City of Centerville. Betz indicated that, because of that, he "feels a little different about this parcel" compared to others they had dealt with. *Id.* at PageID#155. After a vote, the five BZC members unanimously recommended that the Board of Trustees deny Oberer's revised application. *Id.* at PageID#156.

On March 18, 2019, the Sugarcreek Township Board of Trustees denied approval of the revised application. They found that the proposed development did not satisfy all of the criteria set forth in the Zoning Resolution. They cited traffic and safety concerns, intersection concerns, the clustered high density of the patio homes, and the strong opposition of local citizens. Doc. #5-6, PageID#161.

On March 20, 2019, Rammel and Oberer filed suit against the Sugarcreek Township Defendants. The Complaint alleges seven causes of action. Count I alleges that the Township's denial of the revised application exceeds the powers

5

delegated by Ohio Revised Code § 519.02 *et seq.* Counts II through VI seek relief under 42 U.S.C. § 1983 for violations of Plaintiffs' procedural and substantive due process rights, equal protection rights, and Fifth Amendment property rights. Count VII seeks declaratory judgment on a variety of federal and state issues. Plaintiffs also seek compensatory damages, punitive damages, costs and attorneys' fees, as well as a mandatory injunction ordering the Township to approve the revised application and allow the proposed development to proceed. Doc. #1.

Defendants filed an Answer, Doc. #5, attaching numerous public documents referred to in Plaintiffs' Complaint, including the 2013 revised LRLUP, the GCRPCC recommendation, the Sugarcreek Township Zoning Resolution, and relevant minutes from the meetings of the BZC and the Board of Trustees. Defendants then filed a Motion for Judgment on the Pleadings, Doc. #7. That motion is now fully briefed and ripe for decision.

## II.     Fed. R. Civ. P. 12(c)

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if

the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Fed. R. Civ. P. 12(d) provides that if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Nevertheless, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may also be considered.

*Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  The exhibits attached to Defendants' Answer, Doc. #5, fall within the "public record" exception.


## III.   Analysis

Defendants have moved to dismiss all claims asserted in Plaintiffs' Complaint.  The Court turns first to the federal claims.

### A.   Federal Claims

In Counts II through VI, Plaintiffs assert several claims under 42 U.S.C. § 1983, which provides a cause of action against any person who, under color of state law, subjects any citizen to the deprivation of rights secured by the Constitution and laws of the United States.  Local governing bodies are "persons" for purposes of § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Plaintiffs allege that Defendants' conduct violated their procedural and substantive due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and constituted a regulatory taking of their property without just compensation in violation of the Fifth Amendment.

#### 1.   Ripeness

Relying on *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), Defendants argued, in their Motion for Judgment on the Pleadings, that Plaintiffs' takings claim, asserted in Count V, was not ripe because Plaintiffs had not filed a mandamus action in state court and

8

had not yet been denied just compensation for the alleged taking.  Defendants

further argued that, because the procedural due process and equal protection

claims asserted in Counts II, III and IV are ancillary to the takings claim, they are

likewise not ripe and must be dismissed for lack of subject matter jurisdiction.

Nine days after Defendants filed their Motion for Judgment on the Pleadings,

the Supreme Court overruled *Williamson County*.  *See Knick v. Twp. of Scott*,

–U.S.–, 139 S. Ct. 2162, 2167 (2019) (overruling the state-litigation requirement).

On this basis, the Court rejects Defendants' claim that dismissal is warranted on

ripeness grounds and turns to the question of whether Plaintiffs have stated one or

more plausible claims for relief.

### 2.    Substantive and Procedural Due Process (Counts II and IV)

The Fourteenth Amendment to the United States Constitution provides that no

state shall "deprive any person of life, liberty, or property, without due process of

law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause encompasses both

substantive and procedural due process rights.  "Substantive due process prevents

the government from engaging in conduct that shocks the conscience . . . or

interferes with rights implicit in the concept of ordered liberty."  *Prater v. City of*

*Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (internal quotation marks and citation

omitted).  "Procedural due process requires that the government's deprivation of

life, liberty, or property, even if consistent with substantive due process, be

implemented in a fair manner."  *Id.*  (internal quotation marks omitted).

Plaintiffs have alleged violations of their substantive and procedural due process rights. In Count II, Plaintiffs allege that the Township rejected the revised application without appropriate justification, failing to follow the criteria set forth in Ohio Revised Code § 519.02, in its own Zoning Resolution and in the Long-Range Land Use Plan ("LRLUP"). In Count IV, they further allege that the Township failed to follow the criteria set forth in Ohio Revised Code § 519.02 when it required them to remediate the pre-existing road deficiencies. In both Counts, Plaintiffs allege that the proceedings were negatively impacted by the participation of a clearly biased decisionmaker on the Board of Zoning Commission ("BZC").

To prevail on any substantive or procedural due process claim, Plaintiffs must first prove that they have a protected property or liberty interest. *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest."); *EJS Props., LLC v. City of Toledo*, 651 F. Supp. 2d 743, 755 (N.D. Ohio 2009) ("As with substantive due process claims, to prevail on a procedural due process claim brought under § 1983, [a plaintiff] must first allege the existence of a constitutionally-protected property interest.").

Plaintiffs allege that Defendants' conduct deprived them of their protected property and liberty interests. In their Motion for Judgment on the Pleadings, Defendants argue, however, that, as matter of law, Plaintiffs have no cognizable

property interest triggering due process protections.[1]  As the Supreme Court has noted, property interests are not created by the Constitution.  "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

To establish the requisite property interest to support their due process claims, Plaintiffs must prove that they had a "legitimate claim of entitlement" to approval of the revised development plan or a "justifiable expectation" that the Board of Trustees would approve it.  *Triomphe Inv'rs v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995).  This can be done only by showing that if Plaintiffs "complied with certain minimum, mandatory requirements," the Board of Trustees had *no discretion* to deny approval of the plan.  *Silver*, 966 F.2d at 1036.  *See also Triomphe*, 49 F.3d at 203 (holding that because the City Code provided that the City Council "may" grant a special use permit, plaintiff could not show a "legitimate claim of entitlement" or a "justifiable expectation"); *J.D. P'ship v. Berlin Twp. Bd. of Trustees*, 412 F. Supp. 2d 772, 780 (S.D. Ohio 2005) (holding that a

---

[1]  Although the Complaint alleges the existence of protected property *and* liberty interests, the briefs discuss only property interests.  To the extent that Plaintiffs may argue that the participation of a biased decisionmaker deprived them of a protected liberty interest, the Court notes that "freedom from submission to a biased or corrupt decision maker is not itself a liberty interest, but rather constitutes the manner in which due process has been denied where a plaintiff *has first established* a predicate liberty or property interest."  *EJS Props., LLC v. City of Toledo*, 736 F. Supp. 2d 1123, 1130 (N.D. Ohio 2010).  Plaintiffs in this case have failed to establish such an interest.

protected property interest can exist only "if the law circumscribed the discretion of the Defendants to such an extent that approval of the particular use was mandatory once Plaintiffs met certain minimal requirements").

To determine whether the Board of Trustees had discretion to approve or reject Plaintiffs' proposed development plan, the Court turns to Ohio Revised Code § 519.02, the Sugarcreek Township Long-Range Land Use Plan ("LRLUP"), and the Sugarcreek Township Zoning Resolution. *See Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 456 F. Supp. 2d 904, 931 (S.D. Ohio 2006) ("This Court must apply state zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation exists."). Having reviewed the relevant law and documents, the Court agrees with Defendants that, because the Board of Trustees had discretion to approve or reject the proposed development plan, Plaintiffs cannot establish that they have the requisite protected property interest.

Ohio Revised Code § 519.02(A) authorizes the Board of Township Trustees to regulate, by resolution, building and land use in unincorporated territory. Ohio Revised Code § 519.021 allows a Township zoning resolution to adopt regulations for planned-unit developments. Such regulations "shall include standards to be used by the board of township trustees or, if the board so chooses, by the township zoning commission, in determining *whether to approve or disapprove* any proposed development within a planned-unit development." Ohio Revised Code § 519.021 (emphasis added). Accordingly, the statute, on its face, grants legislative discretion to the Board of Trustees to approve or reject a proposed

12

development. The only question is whether such discretion is otherwise circumscribed by the Sugarcreek Township Zoning Resolution or the LRLUP.

The LRLUP for Planning Area 3 provides that "[t]his is a priority area for conservation subdivisions characterized by the clustering of lots to preserve 50 percent or more of a site." Doc. #5-1, PageID#44. Plaintiffs note that the LRLUP is designed to work together with the Zoning Resolution. The LRLUP provides that an application to amend the Zoning Resolution that would conflict with the LRLUP concurrently initiates a modification to the LRLUP. Doc. #9-1, PageID#219. Based on this, Plaintiffs argue that the Township's property owners have a justifiable expectation that zoning applications complying with the LRLUP's planning area recommendations will be approved.

Article 4 of the Sugarcreek Township Zoning Resolution establishes various Zoning Districts and Use Regulations. One of the designated Zoning Districts is a Residential Planned Unit Conservation Development District ("R-PUCD"), which is governed by Article 6 of the Zoning Resolution. Doc. #5-4, PageID#126-28.

Section 6.06(A)(1) sets forth review procedures for approval of a basic R-PUCD. The owner of the property must submit a preliminary development application which "shall meet all of the standards established in [Article 6]," along with the application for a rezoning to an R-PUCD District. Doc. #5-4, PageID#135. The Township then transmits the preliminary application to the Greene County Regional Planning and Coordinating Commission ("GCRPCC"), which "shall recommend the approval, approval with modifications, or denial of the proposed

13

map amendment and preliminary development application, and shall submit a written recommendation to the BZC." The BZC must hold a public hearing on the matter. The BZC then "shall recommend the approval, approval with modifications, or denial of the proposed amendment and preliminary development application," and submit it, along with the GCRPCC's recommendation, to the Sugarcreek Township Board of Trustees. *Id.* at PageID#136. The Board of Trustees must then hold a public hearing. The Board of Trustees then "shall either adopt or deny the recommendations of the BZC, or adopt some modification thereof in accordance with Section 519.12 of the Ohio Revised Code." Upon approval of the preliminary development application, the applicant must submit a final development application. *Id.* at PageID#137.

Section 6.06(D) of the Sugarcreek Township Zoning Resolution sets forth eight criteria that "shall serve as conditions that should be satisfied before the approval of the preliminary development application" for a R-PUCD. Doc. #5-4, PageID#139. Those criteria include the following:

> a. The R-PUCD application and preliminary development application are consistent with the recommendations of the Sugarcreek Township Comprehensive Development Plan and the requirements of this Resolution;
> b. The preliminary development application is consistent with the concept plan, if submitted;
> c. The internal streets and primary and secondary roads that are proposed properly interconnect with the surrounding existing road network, as determined by the Greene County Engineer's Office;
> d. The site will be accessible from public roads that are generally adequate to carry the traffic that will be imposed upon them by the proposed development and the streets and driveways on the site will be adequate to serve the residents or occupants of the

14

proposed development, as determined by the Greene County Engineer's Office;

e. The proposed development will not impose an undue burden on public services and facilities such as fire and police protection, the transportation network, the school system, and the water and sewer services;

f. The minimum common open space areas have been designated and shall be duly conveyed or deeded to a legally established homeowners association, where applicable, or have been addressed in a form permitted in Section 6.05(C)(2);

g. The location and arrangement of residential and accessory structures, parking areas, walks, pedestrian ways, lighting and appurtenant facilities shall be compatible with the surrounding land uses. Any part of a R-PUCD not used for residential and accessory structures or access ways shall be landscaped or otherwise improved and identified with proposed uses unless specified as part of an open space land in accordance with Section 6.05(C) as approved by the BZC.

h. The preliminary development application has been transmitted to, and comments received from, all other agencies and departments charged with responsibility of review.

Doc. #5-4, PageID#139.

Section 6.04(B)(1) of the Zoning Resolution further provides that:

The maximum permitted number of dwelling units in an R-PUCD project shall be determined on a case by case basis taking into consideration the following: (1) Recommendations from the most recently adopted Comprehensive Development Plan; (b) Adjacent land uses; (c) Unique features and characteristics of the land; (d) Development plan layout; (e) Quality and character of the proposed open space; and (f) The maximum density permitted by the adjacent incorporated area, as applicable.

*Id.* at PageID##129-30.

In arguing that they have a legitimate claim of entitlement to approval of their application, Plaintiffs rely heavily on the unpublished case of *Ritz v. City of Findlay*, No. 3:07cv3716, 2009 WL 1954635 (N.D. Ohio July 6, 2009). The

15

ordinance at issue in that case provided that the Planning Commission "shall consider" a list of criteria in reviewing a plan submission. It then had authority to approve, approve with conditions, or "if appropriate, reject the site plan submission if it is nonconforming." *Id.* at *5. The court held that the use of the word "shall," combined with the authority to reject the plan submission "if it is nonconforming," provided a "mandate that the Commission must approve conforming applications, either with or without conditions." *Id.* The court held that, because the plaintiffs' site plan conformed to all listed criteria, they had a justifiable expectation that the plan would be approved. *Id.* at *6. Plaintiffs argue that, as in *Ritz*, Section 6.06(D) of the Sugarcreek Township Zoning Resolution lists eight criteria that "shall" serve as conditions that should be satisfied before the approval of the preliminary development application" for a R-PUCD. Doc. #5-4, PageID#139.

Plaintiffs' reliance on *Ritz* is misplaced for two reasons. First, in sharp contrast to the ordinance at issue in *Ritz*, nothing in Sugarcreek Township's Zoning Resolution limits the authority of the Board of Trustees to reject a plan only if it is fails to conform to the criteria set forth in Section 6.06(D). The Zoning Resolution states that the eight criteria "shall serve as conditions that should be satisfied" before the approval of the application. Doc. #5-4, PageID#139. However, nothing indicates that, if all criteria are satisfied, the application must be approved.

Second, Plaintiffs' argument is based on the presumption that their revised application met all eight approval criteria set forth in Section 6.06(D) of the Zoning Resolution. Not all those criteria, however, are objective. For example, the Board

16

of Trustees clearly has discretion to determine whether "[t]he R-PUCD application and preliminary development application are consistent with the recommendations of the Sugarcreek Township Comprehensive Development Plan and the requirements of this Resolution." *Id.* The Board, in fact, cited several reasons why it believed that Plaintiffs' revised application did not pass muster, most notably traffic concerns in the immediate area of the proposed development.

The Court finds that the Board of Trustees had discretion to approve or deny Plaintiffs' application. Based on the foregoing, the Court finds that Plaintiffs cannot show that they have a legitimate claim of entitlement or a justifiable expectation that the proposed plan would be approved. Therefore, as a matter of law, Plaintiffs cannot establish a protected property interest, and have failed to state a plausible substantive or procedural due process claim. Although the Court would typically grant leave to amend the Complaint to cure any alleged defect, any amendment in this case would be futile given that the claims fail as a matter of law. Accordingly, the Court SUSTAINS Defendants' Motion for Judgment on the Pleadings as to Counts II and IV and dismisses those claims with prejudice.

### 3. Equal Protection (Count III)

The Fourteenth Amendment to the United States Constitution also provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. IV § 1. Here, Plaintiffs do not claim infringement of a fundamental right or discrimination against a suspect class. Rather, their claim is based on a "class of one" theory as recognized by the

Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). To succeed on such a theory, they must show that: (1) they were "intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Id.* at 564.

Count III of the Complaint alleges that, in denying Oberer's application, the Township treated Plaintiffs differently than similarly-situated owners and developers, and that the Township's actions are not rationally related to a legitimate purpose. Defendants argue, however, that the factual allegations are insufficient to support a plausible claim for relief.

The first question is whether Plaintiffs have pled sufficient facts to support a finding that they were intentionally treated differently than similarly-situated owners and developers. Plaintiffs cite to the "high rate of growth and development experienced in the Township over the last decade." Doc. #1, PageID#9. This implies that the Board of Trustees has recently approved plans of several other owners and developers but says nothing about whether they were similarly situated.

Plaintiffs then allege that the Township has admitted that, in deciding whether to approve development plans, it treated property owners who signed Non-Annexation Agreements differently than those who did not. As an example of disparate treatment, Plaintiffs cite to the Black Farm development, which was approved by the Township in 2018. *Id.* The Complaint further notes that the

Black Farm and Woodland Ridge developments both have higher density rates than the proposed density rate for Elliot Woods. *Id.* at PageID#5.

Defendants acknowledge that Plaintiffs need not show an exact correlation between themselves and others; however, Plaintiffs "must show that they were treated differently than those similarly situated in all material respects." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012). Defendants argue that Plaintiffs' Complaint is deficient in this respect. Density is just one of many factors considered in determining whether to approve a preliminary development plan and, although the total number of units per acre in Plaintiffs' proposed development may be less than in other residential developments, Plaintiffs' patio home units are all clustered in one area of the property. Defendants further note that, in denying Plaintiffs' revised application, the Board of Zoning Commission and Board of Trustees also cited traffic and safety issues, roads, intersections and the strong opposition of citizens. Plaintiffs' Complaint, however, makes no mention of whether the other residential developments faced similar obstacles.

In the Court's view, these arguments are better addressed in a summary judgment motion where all relevant evidence concerning the circumstances surrounding the Township's approval of these other developments can be considered. Accepting Plaintiffs' allegations as true, the Court finds that Plaintiffs have pled sufficient facts to support a finding that they were intentionally treated differently than similarly-situated owners and developers.

The next question is whether Plaintiffs have pled sufficient facts to support a finding that there is no rational basis for the difference in treatment. To satisfy this element, Plaintiffs must either negate "every conceivable basis which might support the government action" or demonstrate "that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens,* 411 F.3d 697, 711 (6th Cir. 2005).

Viewing Plaintiffs' Complaint as whole, the Court finds that Plaintiffs have adequately pled that the denial of the revised application was motivated by animus or ill will. They allege that, during the December 4, 2018, meeting, the BZC Chairperson referenced the litigation stemming from the annexation of Oberer's Dille/Cornerstone project, and the subsequent steps that the Township had taken to prevent similar future annexations, including revisions to the LRLUP and the Non-Annexation Agreements with property owners whose land was vulnerable to annexation. Plaintiffs further allege that this sentiment was echoed by the Township Trustees at the later public meetings. Doc. #1, PageID##3, 6.

In the Court's view, these allegations support a finding that Defendants had "some pre-existing bias or motive to retaliate against the plaintiff." *Slusher v. Delhi Twp.*, No. 1:08-cv-273, 2009 WL 2145608, at *7 (S.D. Ohio July 14, 2009). *See also Olech*, 528 U.S. at 563 (recognizing a "class of one" equal protection claim where the village's demand for a larger easement to connect plaintiff's property to the municipal water supply was allegedly "motivated by ill

20

will resulting from the Olech's previous filing of an unrelated, successful lawsuit against the Village").

For the reasons explained above, the Court finds that Plaintiffs' allegations are sufficient to state a plausible "class of one" Equal Protection claim. The Court therefore OVERRULES Defendants' Motion for Judgment on the Pleadings with respect to Count III.

### 4. Takings (Count V)

Count V of the Complaint alleges that the Township's denial of the zoning application, and its requirement that Plaintiffs remediate pre-existing road deficiencies, constitute an appropriation of Plaintiffs' property for its own use, without paying just compensation, in violation of the Fifth Amendment.

Other than arguing that this claim is not ripe—an argument that, as discussed above, is no longer viable—Defendants do not argue that Plaintiffs have failed to state a plausible claim. Accordingly, Count V survives the Motion for Judgment on the Pleadings.

### 5. § 1983 (Count VI)

Count VI of the Complaint alleges that the Township's denial of the zoning application constitutes a denial of rights under the Fifth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983. Section 1983, however, is not itself a statute that can be violated. Rather, it is simply the vehicle through which persons can seek relief for constitutional violations.

Counts II, III, IV, and V already seek relief under § 1983 for alleged violations of Plaintiffs' constitutional rights. Count VI asserts no additional claims and serves no useful purpose. Accordingly, the Court SUSTAINS Defendants' Motion for Judgment on the Pleadings as to Count VI.[2]

**B.    State Claims**

### 1.    Supplemental Jurisdiction

Defendants argue that if the Court dismisses all federal claims, it should decline to exercise supplemental jurisdiction over the state claims. Given that some of the federal claims survive the Motion for Judgment on the Pleadings, this argument is no longer applicable.

### 2.    *Ultra Vires* (Count I)

In Count I of the Complaint, Plaintiffs correctly note that Sugarcreek Township's powers with respect to zoning issues are limited to those expressly delegated to it under Ohio Revised Code § 519.02 *et seq.* Plaintiffs allege that: (1) the grounds asserted for denying their application exceed such delegated powers and that the denial is therefore *ultra vires*, unlawful and void; (2) the denial had no rational relationship to the public health and safety of the citizens of the Township; (3) the denial is not in accordance with the LRLUP; and (4) the denial is arbitrary,

---

[2]    Dismissal of Count VI does not preclude Plaintiffs from recovering attorneys' fees under 42 U.S.C. § 1988 if they prevail on any of their § 1983 claims.

capricious, discriminatory, and unreasonable. This claim is closely related to Plaintiffs' § 1983 due process claims.

To the extent that Plaintiffs, in Count I, ask the Court to void the Township's denial of the application for the proposed development, the Court finds that Plaintiffs have failed to state a plausible claim for relief. As discussed above, Ohio Revised Code §§ 519.02 and 519.021 give the Township Board of Trustees authority to regulate, by resolution, building and land use in unincorporated territory, and to adopt planned-unit development regulations. Such regulations "shall include standards to be used by the board of township trustees . . . in determining whether to approve or disapprove any proposed development within a planned-unit development." Ohio Revised Code § 519.021.

In accordance with § 519.021, the Sugarcreek Township Zoning Resolution sets forth "conditions that should be satisfied before the approval of the preliminary development application." Doc. #5-4, PageID#139. The minutes from the BZC meeting and the public hearing held by the Board of Trustees indicate that both entities considered whether Plaintiffs had satisfied these criteria. Ultimately, the Board of Trustees, exercising its discretion, determined that concerns about traffic and safety, intersections, population density, and community opposition all counseled against approval of the preliminary development plan.

Plaintiffs have failed to plead any facts to support a claim that the Township's denial of Plaintiffs' application was an *ultra vires*, arbitrary, unreasonable and void exercise of the Township's zoning powers. Accordingly,

23

the Court SUSTAINS Defendants' Motion for Judgment on the Pleadings with respect to Count I. Given that any amendment of the factual allegations supporting this claim would futile, the Court DISMISSES Count I WITH PREJUDICE.

### 3. Declaratory Judgment (Count VII)

In Count VII of the Complaint, Plaintiffs seek declaratory judgment, under Ohio Revised Code § 2721.01 *et seq.*, on a variety of issues that largely mirror the claims asserted in Counts I through VI.

To the extent that Plaintiffs request a declaration that (1) the Township's actions in denying the application are unlawful, unconstitutional, and void, and (2) the Township has violated Plaintiffs' due process rights, the Court, for reasons previously explained, SUSTAINS Defendant's Motion for Judgment on the Pleadings and DISMISSES these portions of Count VII WITH PREJUDICE.

To the extent that Plaintiffs request a declaration that (1) the Township violated their equal protection rights, (2) the Township has taken their property for public use without just compensation in violation of the Fifth Amendment, and (3) they are entitled to punitive damages, and attorneys' fees under 42 U.S.C. § 1988, the Court finds that Plaintiffs have stated plausible claims for relief. Accordingly, the Court OVERRULES this portion of Defendants' Motion.

Plaintiffs' other request for declaratory relief is unrelated to the claims asserted in Counts I through VI. Plaintiffs seek a declaration that the Non-Annexation Agreement is void and unenforceable because: (1) an Ohio township lacks authority to execute non-annexation agreements with private property

24

owners; (2) Barry Tiffany, as Township Administrator, lacked authority to enter into the Non-Annexation Agreement on behalf of the Board of Trustees; and (3) no consideration existed for the Agreement.

Although the Court makes no determination at this time whether the first two grounds asserted by Plaintiffs render the Non-Annexation Agreement void and unenforceable, the Court, for reasons discussed below, finds that Plaintiffs have at least stated a plausible claim for relief. The third ground asserted by Plaintiffs, however, is clearly baseless. In exchange for Rammel's promise not to seek or to oppose annexation for a period of ten years, the Township agreed not to impose TIF legislation on Rammel's property for the same period of time. Nothing suggests that this would not constitute adequate consideration.

As to the Township's authority to execute Non-Annexation Agreements with private property owners, Defendants note that Ohio law provides that townships may "receive and hold real estate by devise or deed, or receive and hold personal property for the benefit of the township for any useful purpose. The board of township trustees shall hold such property in trust for the township for the purpose specified in the devise, bequest, or deed of gift." Ohio Revised Code § 503.01. Defendants maintain that the Non-Annexation Agreement confers a nonpossessory interest in Rammel's property in the form of a restrictive covenant. Section 503.01, however, speaks only of real estate being received and held "by devise or deed." The Non-Annexation Agreement therefore appears to fall outside the scope of this statute.

Moreover, as Plaintiffs point out, Ohio Revised Code § 709.192 specifically governs non-annexation agreements. It states that a municipality and a township may enter into an agreement providing for "[a]ny periods of time during which no annexations will be made and any areas that will not be annexed." Ohio Revised Code § 709.192(A) and § 709.192(C)(2). This statute, however, grants a township no similar authority to enter into a non-annexation agreement with a private property owner. For this reason, the Court finds that Plaintiffs have stated a plausible claim that the Non-Annexation Agreement between the Township and Rammel is void and unenforceable.

Plaintiffs also argue that, assuming *arguendo* that the Township had authority to enter into the Non-Annexation Agreement with Rammel, Township Administrator Barry Tiffany lacked the authority to draft and execute that Agreement on behalf of the Board of Trustees. By statute, a township administrator shall, among other enumerated duties, "[a]ssist in the administration, enforcement, and execution of the policies and resolutions of the board." Ohio Revised Code § 505.032(A). In addition, the administrator may "[p]erform such additional duties as the board may determine by resolution." Ohio Revised Code § 505.032(G). Plaintiffs argue that, because drafting and signing a Non-Annexation Agreement is not an "administrative" function, Tiffany had no authority to enter into such an agreement, absent a specific resolution by the Board of Trustees.

Nevertheless, in addition to the duties specifically enumerated in the statute, the Board may also assign to the administrator any "duties under its control." Ohio Revised Code § 505.032. Defendants maintain that, because receipt of the Township's interest in the restrictive covenant was a duty within the Board's control, the Township was permitted to assign Tiffany responsibility for executing the Non-Annexation Agreement on its behalf.

Defendants' argument, of course, presumes that the Township itself had authority to enter into the Non-Annexation Agreement with Rammel. Given that the Court has already found that Plaintiffs have stated a plausible claim that the Township had no such authority, the Court likewise finds that Plaintiffs have stated a plausible claim that Tiffany lacked authority to draft and execute the Agreement on behalf of the Board.

In short, to the extent that Plaintiffs seek a declaration that the Non-Annexation Agreement is void and unenforceable, the Court concludes that Plaintiffs have stated a plausible claim for relief. Accordingly, the Court OVERRULES Defendants' Motion for Judgment on the Pleadings with respect to this portion of Count VII.

## IV.    Conclusion

Defendants' Motion for Judgment on the Pleadings, Doc. #7, is SUSTAINED IN PART and OVERRULED IN PART. Count I (*Ultra Vires* Claim), Counts II and IV (Due Process Claims), Count VI (§ 1983 Claim), and portions of Count VII

27

(Declaratory Judgment) are dismissed with prejudice. Count III (Equal Protection Claim), Count V (Takings Claim), and portions of Count VII (Declaratory Judgment) remain viable.

The Court will hold a conference call on **April 3, 2020, at 5:00 p.m.**, to discuss the viability of the September 14, 2020, trial date.

Date: March 25, 2020

WALTER H. RICE
UNITED STATES DISTRICT JUDGE